John B. McCRACKEN, Appellant,

v.

RICHMOND, FREDERICKSBURG AND POTOMAC RAILROAD COMPANY, Appellee.

No. 7312.

United States Court of Appeals Fourth Circuit.

Argued Nov. 30, 1956.

Decided Jan. 7, 1957.

Wesley E. McDonald, Washington, D. C. (B. Austin Newton, Jr., Washington, D. C., on the brief), for appellant.

Armistead L. Boothe, Alexandria, Va. (Wirt P. Marks, Jr., Richmond, Va., and Boothe, Dudley, Koontz & Boothe, Alexandria Va., on the brief), for appellee.

Before SOPER and SOBELOFF, Circuit Judges, and CHESNUT, District Judge.

SOBELOFF, Circuit Judge.

The sole question on this appeal concerns the propriety of the District Judge's granting, at the conclusion of the plaintiff's evidence, a directed verdict for the defendant railroad company and ordering a dismissal of the suit.

The appellant was employed as a car repairman helper at the Potomac Yards of the Richmond, Fredericksburg and Potomac Railroad Company, at Alexandria, Virginia. According to the plaintiff's evidence, while he was carrying a journal box weighing approximately eighty-seven pounds, his right heel sank into the soft ground to a depth of approximately two and one-half or three inches and struck a clinker embedded be-

low the surface and described at one time as approximately three inches long and two and one-half or three inches thick, and at another time as the size of a golf ball. This caused him to fall and he suffered injuries to his back, for which he brought suit under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., on the theory that the defendant had violated its duty of providing him a reasonably safe place to work.

The plaintiff testified to the condition of the earth in the area: that there were, within seventy-five feet of the point where he was injured, gullies eight inches wide and six inches deep; that the ground where he fell was "very soft and fluffy"; that this condition had existed for some time and was known to the employer and other employees. The deposition of a witness of the plaintiff, Owens, was in some measure to the same effect. However, Sellers, another witness called by the plaintiff, who was also employed by the railroad, replied affirmatively when asked by the defense lawyers if the ground was not soft and dangerous, but "perfect, flat, hard-packed, and well maintained." Thereupon, counsel for the appellant claimed surprise, renounced the witness, and undertook to cross-examine with a view to showing that he had made statements out of court contrary to the testimony given by him in court.

At the conclusion of the plaintiff's case, the District Judge granted a motion for a directed verdict in favor of the defendant. In explaining this action, the Court said: "If this case went to the jury and the jury found for the plaintiff, it would have nothing to support its verdict."

More in detail, the Court added that the testimony did not show a dangerous condition or an unsafe place to work, and that even if the condition were dangerous, there had been no showing of negligent maintenance in allowing the dangerous condition to exist long enough to charge the railroad with knowledge and to enable it to make repairs. The

Court added: "Assuming that the condition was apparent, the evidence of the plaintiff is that it was maintained with regularity, even daily; and that certainly shows no negligence."

This latter statement apparently referred to the testimony of the witness Sellers, but the plaintiff's testimony and Owens' deposition gave a conflicting version which, if believed, did tend to show that a dangerous condition had been permitted by the defendant to continue for a considerable time.

It may be true that the witness Owens did not testify to a dangerous condition in the exact spot where the plaintiff was injured, but he did testify to the condition in the general area. The defendant argued that Owens' description related to conditions some distance away and did not support plaintiff's claim, for Owens thought the accident was on track number two rather than track number five; while plaintiff argued that this testimony did shed light on the conditions generally prevailing and tended indirectly to corroborate plaintiff's testimony as to disrepair at the point of the plaintiff's fall. Furthermore, the appellant says that Owens was counting from the opposite end, in which case what he called track number two was actually track number five, the place of the accident. These were issues that the jury could weigh, as the testimony was susceptible to various answers.

■ The appellee recognizes that in ruling on a motion for a directed verdict, the Court's obligation is to accept as true the interpretation of the facts which is most favorable to the plaintiff and all inferences which may reasonably be drawn from such facts when viewed in the light most favorable to him. Garrison v. United States, 4 Cir., 62 F.2d 41; George v. Leonard, 4 Cir., 169 F. 2d 177; Baltimore & Ohio Railroad Co. v. Postom, 85 U.S.App.D.C. 207, 177 F. 2d 53. The appellee contends, however, that the testimony, even when so viewed, did not disclose a breach of duty on its part.

It is not disputed that the railroad is not an insurer of the employee's safety; that the mere happening of the injury raises no presumption of negligence, and that there can be no recovery in the absence of proof of negligence. Moore v. Chesapeake & Ohio Railway Co., 340 U.S. 573, 71 S.Ct. 428, 95 L.Ed. 547; Webb v. Illinois Central Railroad Co., 7 Cir., 228 F.2d 257; Chicago & North Western Railway Co. v. Payne, 8 Cir., 8 F.2d 332. We think, however, that the testimony of the plaintiff and his witness Owens, if believed, could be regarded by the jury as showing a dangerous condition of disrepair in the place where the plaintiff was required to work and that the railroad had negligently permitted such condition to continue without making repairs for a long time — two years, according to Owens.

Appellee puts reliance on appellant's admission that it was the buried clinker that caused his fall, the appellee implying that there was no actionable negligence, because the clinker's presence under the surface could not be foreseen. This is too narrow a base for the argument that the defect which is said to have existed in the surface of the yard played no part in the fall and injury to the plaintiff. But for the general condition of the ground, the clinker's existence beneath the surface would not have been injurious to the appellant. It may be true that the appellee did not foresee the presence of a buried clinker at the spot of the accident; but the particular and exact manner of the accident need not be foreseen. We cannot say as a matter of law that reasonable men could not deem the soft, fluffy earth in a railroad yard a dangerous condition, exposing employees working with heavy equipment to accidents, or that the presence of buried clinkers or other objects in a busy railroad yard could not have been foreseen to increase the hazard. While the clinker would have been harmless beneath a firm surface, it became a jury question whether or not the soft surface which yielded beneath plaintiff's weight and caused contact with the clinker was the efficient cause of the injury. We cannot say that it is impossible for reasonable men to draw opposite conclusions, and so we think it was fairly a matter for the jury. Nor can we say that the plaintiff did not present sufficient evidence to carry these issues to the jury. As we have already said, there was substantial evidence by the plaintiff and the deponent Owens regarding the general condition of the ground in the vicinity of the accident and at the spot where it happened.

In this court, the parties devoted considerable attention to the law of hostile witnesses. The rule is, of course, that when a party calls a witness, he vouches for his veracity and and reliability, Wigmore, 3rd Ed. Sec. 898; but if the witness' testimony is different from that which the party calling him was led to expect, he may claim surprise and show that the witness had given a different version out of court. This does not have the force of independent testimony, and is admitted merely to show why the party called him. "Primarily, it neutralizes the statement on the stand, by showing that the witness cannot be correct in both statements and is as likely to be wrong in the latter as in the former." Wigmore, 3rd Ed. Sec. 902. The trial judge stated that the earlier, apparently contradictory statements of the witness were admitted for their bearing on the question of the witness' credibility, and that they did not constitute substantive proof. This is undeniably correct, and insofar as the substance of the testimony is concerned, it must stand as given in the courtroom. However, it is not conclusive upon the party who offered the witness; if it were, then introduction of prior statements for impeachment could not be allowed, as indeed seems to have been the early rule. See Wigmore, 3rd Ed. Sections 896–9. The conflict between the testimony of the witness Sellers and the other testimony offered on behalf of the plaintiff is one to be resolved by the jury, just as in cases of conflict between a plaintiff himself and a defendant.

■ There is a difference in the function of the judge when he is ruling on a motion for directed verdict and when he passes on a motion for a new trial. In the former instance, it is his duty to accept the plaintiff's version as true for the purpose of the motion, notwithstanding the existence of strong testimony to the contrary; the judge is not concerned with the weight of the evidence. On a motion for new trial, however, he has wider, though not unlimited latitude and he may set the verdict aside where it is against the weight of the evidence, or to prevent injustice. The two situations should not be confused. It is the wiser and better course, and the one we think commanded by the rule, to submit the case to the jury where there is evidence to support the plaintiff's case, and leave until a later time, after the jury has performed its function, considerations regarding the weight of evidence.

As was pointed out by Judge Parker, speaking for this Court in Garrison v. United States, 4 Cir., 62 F.2d 41, 42, "The contention is frequently made that the judge should direct a verdict whenever the evidence is such that he would be justified in setting the verdict aside. The distinction, however, is clear. Where there is substantial evidence in support of plaintiff's case, the judge may not direct a verdict against him, even though he may not believe his evidence or may think that the weight of the evidence is on the other side; for, under the constitutional guaranty of trial by jury, it is for the jury to weigh the evidence and pass upon its credibility. He may, however, set aside a verdict supported by substantial evidence where in his opinion it is contrary to the clear weight of the evidence, or is based upon evidence which is false; for, even though the evidence be sufficient to preclude the direction of a verdict, it is still his duty to exercise his power over the proceedings before him to prevent a miscarriage of justice. See Felton v. Spiro [6 Cir.] 78 F. 576. Verdict can be directed only where there is no substantial evidence to support recovery by the party against whom it is directed or where the evidence is all against him or so overwhelmingly so as to leave no room to doubt what the fact is. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720." See also Roedegir v. Phillips, 4 Cir., 85 F.2d 995, 996; Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350, 354; Snead v. New York Central Railroad Co., 4 Cir., 216 F.2d 169. We do not think the evidence here is so overwhelmingly against the plaintiff as to justify a directed verdict. For an instance where a directed verdict was thought proper, see Atlantic Coast Line v. Collins, 4 Cir., 235 F.2d 805.

The distinctions pointed out by Judge Parker are particularly compelling where the plaintiff alone has presented his case. We think these distinctions were not observed, and that in granting the motion, there was in essence an adjudication of the weight of the evidence and not merely its sufficiency.

For these reasons, the directed verdict will be set aside and the case remanded for trial.

Reversed and remanded.