EUGENE RIDDLE v. PERCY JAMES ARTIS, HARRY LEE MORRIS, JR., AND MRS. HARRY LEE MORRIS (AND RAYMOND McMILLAN, ADDITIONAL PARTY DEFENDANT).

(Filed 25 September, 1957.)

**1. Pleadings § 15: Trial § 21—**

A demurrer to the complaint, G.S. 1-127, and a demurrer to the evidence, G.S. 1-183, are distinct; the first challenges the sufficiency of the pleading, the second challenges the sufficiency of the evidence.

**2. Automobiles § 43: Torts § 4—**

Drivers of separate cars may be held liable as joint tort-feasors only if their separate acts of negligence concur. in producing a single and indivisible injury, and plaintiff's evidence must be sufficient to warrant the inference that the negligence of the second driver caused or contributed to his injuries in order to hold the second driver as a joint tort-feasor.

**3. Automobiles § 43—Evidence held insufficient to show that second defendant was liable to plaintiff as a joint tort-feasor.**

Plaintiff's evidence tended to show that he was knocked unconscious in a collision between a car driven by himself and a car driven by the first defendant in the opposite direction, that shortly thereafter his car was struck from the rear by a car driven by the second defendant, and that the condition of the vehicles after the collisions and the evidence as to their speed shortly before the accidents indicated that the impact of the first collision was much the more violent. Plaintiff's evidence further disclosed that the second defendant was uninjured and was present at the scene of the collisions when the patrolman arrived, and plaintiff testified to the effect that as far as he knew all of his injuries were received as a consequence of the first collision. *Held:* Whether the second collision caused or contributed to the personal injuries received by plaintiff is left in the realm of conjecture and surmise by plainti's evidence, and therefore judgment of nonsuit was properly entered as to the second defendant.

APPEAL by plaintiff from *Bundy, J.,* April Term, 1957, of NORTHAMPTON.

At Spring Term, 1956, the allegations of the complaint then summarized, considered on demurrer *ore tenus* interposed by defendants

Morris, were held sufficient; and the judgment sustaining said demurrer was reversed. *Riddle v. Artis*, 243 N.C. 668, 91 S.E. 2d 894.

At trial, when plaintiff had offered his evidence and rested, the court allowed the motion of defendants Morris for judgment of involuntary nonsuit. Judgment of involuntary nonsuit was entered and plaintiff appealed.

*Allsbrook & Benton by J. E. Knott, Jr., for plaintiff, appellant.*

*Kelly Jenkins and Eric Norfleet for defendants Harry Lee Morris, Jr., and Mrs. Harry Lee Morris, appellees.*

BOBBITT, J. Artis, an original defendant, and McMillan, an additional defendant, are not parties to this appeal. The judgment recites that plaintiff had obtained a judgment by default and inquiry against defendants Artis and McMillan. We are concerned only with the sufficiency of the evidence to warrant submission to the jury of the issues arising on plaintiff's alleged cause of action against defendants Morris.

"A demurrer to a complaint, G.S. 1-127, and a demurrer to the evidence, G.S. 1-183, are different in purpose and result. One challenges the sufficiency of the pleadings, the other the sufficiency of the evidence." *Barnhill, J.* (later *C. J.*), in *Lewis v. Shaver*, 236 N.C. 510, 512, 73 S.E. 2d 320.

Plaintiff's action is to recover damages on account of (1) personal injuries, and (2) damage to his clothing, camera, camera equipment and watch. Plaintiff was operating his father's 1953 Ford automobile. No claim for damages to it is for determination in this action.

Plaintiff's evidence tended to support his allegation that his personal injuries consisted of "a punctured right lung into which a piece of metal was driven by the force of the collision, a bad laceration of his left hand and arm, a puncture wound of the right leg, multiple rib fractures and lacerations of the scalp."

Two collisions on Highway #117 are referred to in the evidence. The first collision was between the 1953 Ford, headed south, operated by plaintiff, and a 1951 Pontiac, headed north, operated by Artis. The second collision occurred shortly thereafter when a 1950 Chevrolet, operated by Harry Lee Morris, Jr., hereinafter called Morris, headed south, struck the rear of the 1953 (Riddle) Ford.

As to the (Artis) Pontiac, there was evidence that "three of the four tires were completely slick without any tread whatsoever; no semblance of a tread on them." Suffice to say, there was plenary evidence (1) that the first collision was proximately caused by the negligence of Artis, and (2) that the first collision so caused seriously injured plaintiff.

Plaintiff's action is based on allegations that his serious injuries were proximately caused by the concurrent negligence of Artis and Morris. To prove his case against defendants Morris, plaintiff must show (1) that the second collision was proximately caused by the negligence of Morris, and (2) that the second collision so caused proximately caused or contributed to the injuries upon which plaintiff's action is based. *Lane v. Bryan, ante,* 108, 97 S.E. 2d 411.

The evidence, considered in the light most favorable to plaintiff, tends to show these facts:

On December 25, 1953, about 2:15 p.m., plaintiff, accompanied by his wife, was traveling south in his right lane. "A light misty rain was falling," and the two lane black top highway was wet. As he started into a gradual curve (3 or 4%) to his right, he noticed the 1951 Pontiac then approaching in its right lane. When these cars were some 75-100 feet apart, the Pontiac suddenly skidded directly across plaintiff's lane of travel. It turned some 90 degrees and was at right angles to the front of plaintiff's car. Confronted with this emergency, plaintiff immediately applied his brakes, threw his hands in front of his face and "practically instantly . . . rammed" the Pontiac car. The collision occurred in his lane of travel. He had no opportunity to swerve from his original course.

Prior to said collision, plaintiff had been driving at a speed of 35-45 miles per hour. He estimated that his speed was 5 miles per hour less at the moment of impact. As to the speed of the Pontiac, plaintiff thought it probable that its speed prior to the collision was approximately the same as his own.

At the time of collision, the right side of the Pontiac was broadside to plaintiff. The front of plaintiff's car struck the right side of the Pontiac "almost in the center of the front right door." Plaintiff thought it probable that the Pontiac had skidded toward him a short distance "in that broadside condition" before the cars collided.

Plaintiff alleged that the second collision occurred "immediately following the collision between the front of plaintiff's car with the right side of defendant Artis' car and while plaintiff was in a seriously injured condition and unable to extricate himself." Plaintiff testified: "When I struck the car ahead of me I was knocked unconscious temporarily, and remember nothing after striking the car until I was being helped out of the car by some passers by. When helped out of the automobile I did not have presence of mind enough to observe whether or not my car had been struck from the rear by another car, because I was in severe pain . . ."

He testified further: "The road approaching this curve was straight for some distance behind me. At the time I approached the Artis car I had no knowledge there was a car behind me. So far as I know there

was no car behind me immediately before or after my car came in contact with the Artis car."

Plaintiff's wife testified that she was knocked unconscious by the collision and knew nothing about it. She was "dozing" when it happened. The injuries she received "were facial, scalp and to the front of (her) body." Her testimony contains no reference to a second collision.

W. G. Wright, a member of the State Highway Patrol, received a call at approximately 2:20 p.m. and shortly thereafter (about 10-15 minutes) reached the scene of the collisions. When he arrived, "Mr. and Mrs. Riddle were not there, and neither were any of the occupants of the Artis car." Morris was there. "Morris was not hurt."

As to the physical damage to the three automobiles, Wright testified: "The center right side of the Artis car was damaged. Dead center front and right rear of the Riddle car was damaged. The left front just a little past center of the Morris car was damaged. . . . The right rear of the Riddle car was smashed in, bumper, trunk lid, tail light and fender smashed forward. The front of the Morris car, grill mashed in, bumper was damaged, radiator knocked back against fan and fender bent."

Wright testified further that Morris explained the rear end collision in which he was involved as follows: "That shortly back he (Morris) pulled out with intention of passing (the Riddle car), and they were approaching a curve and he changed his mind and pulled back in behind the Riddle car, and shortly thereafter the collision occurred between the Riddle and the Artis cars."

Luby Edwards and Hugh H. Gurley helped move the wrecked cars.

Edwards testified: "The best I remember the rear of the Riddle car, boot lid, right quarter panel was smashed in pretty bad; that is the rear of the Ford on right side. By smashed in I mean it was pushed towards the front end. I don't remember just how bad the Chevrolet or Morris car was damaged, but do know the bumper was messed up a little bit, grill and radiator, and bumper mashed in toward the back." He testified further: "The wheels on Chevrolet were not damaged, but think we had to pull off one of the fenders so they could drive it, and also had to disconnect the fan belt. All four of tires were standing up. The Chevrolet could have been driven away except for the fact something was wrong with fan and radiator. I think the radiator was hitting the fan."

Gurley testified: "The Chevrolet could have been driven. The tires and wheels were all right. I think we pulled off the fan belt before it could be moved. I know we pulled off a fender that was hitting a tire, and took fan belt aloose so the fan would not turn."

E. N. Riddle, Sr., plaintiff's father, testified: "I could not give any details about damage to the car; just completely wrecked . . . It was torn all to pieces and damaged in front and rear."

Dr. W. C. Sealy, by deposition, testified as to plaintiff's injuries, his treatment thereof, and the results. The injuries described in his testimony are those alleged in the portion of the complaint quoted above. None of his testimony is directed to whether in his opinion any of plaintiff's injuries were caused by the second collision.

We pass as unnecessary to decision the serious question as to whether the evidence would be sufficient for jury consideration on an issue as to whether the damage done to the rear of the Riddle car was caused by the negligence of Morris. Decision on this appeal hinges on whether the evidence for plaintiff is sufficient to show any causal relation between the alleged negligence of Morris and the serious injuries sustained by plaintiff.

In relation to the facts of this case, the liability of defendants Morris as joint tort-feasors depends upon whether Morris' alleged separate acts of negligence concurred with the negligence of Artis in producing a single and indivisible injury. *Bost v. Metcalfe,* 219 N.C. 607, 14 S.E. 2d 648. Specifically, the question is whether plaintiff offered evidence sufficient to warrant the inference that the second collision caused or contributed to plaintiff's injuries.

Since the physical damage to the right rear of the 1953 (Riddle) Ford and to the left front of the 1950 (Morris) Chevrolet is the principal if not the sole evidence upon which plaintiff must rely, we have set it forth in detail.

We do not discount the possibility that the second collision *might have* injured plaintiff or might have aggravated the serious injuries received by plaintiff in the first collision. Certainly, as suggested, the second collision did not benefit plaintiff. Too, we are well aware that serious injuries often result from what appear to be minor collisions while often persons involved in collisions of terrific impact escape without injury.

These facts appear from plaintiff's evidence:

1. The two vehicles involved in the first collision met and collided when each was traveling approximately 35 miles per hour.

2. Both plaintiff and his wife were knocked unconscious by the impact of the first collision; and plaintiff, according to his allegations and evidence, was seriously injured before the second collision occurred.

3. Plaintiff was asked this question: "And, as far as you know, all of the injury you received was in consequence of coming in contact with the Artis car?" His answer was: "So far as I know, yes sir."

4. Morris, uninjured, was present at the scene of the collisions when the patrolman arrived.

Careful consideration of plaintiff's evidence impels the conclusion that it is insufficient for submission to the jury on the question as to whether the second collision caused or contributed to the injuries received by plaintiff or to the damage in respect of the articles of personal property referred to in the complaint. It leaves the crucial question in the realm of conjecture and surmise. Hence, the judgment of involuntary nonsuit was proper. *Lane v. Bryan, supra.*

Affirmed.