**Marion R. GROOMS, Appellant,**

**v.**

**MINUTE–MAID, a corporation, and Rex Jones, Appellees.**

**No. 7815.**

United States Court of Appeals Fourth Circuit.

Argued March 20, 1959.

Decided June 8, 1959.

William E. Chandler, Jr., Columbia, S. C., and Clyde C. Dean, Orangeburg, S. C., for appellant.

Charlton B. Horger, Orangeburg, S. C., and L. Marion Gressette, St. Mathews, S. C. (Louis Rosen, and Rosen & Horger, Orangeburg, S. C., on brief), for appellees.

Before HAYNSWORTH, Circuit Judge, and BOREMAN and STANLEY, District Judges.

STANLEY, District Judge.

The plaintiff, Marion R. Grooms, instituted this action in the United States District Court for the Eastern District of South Carolina, against the defendants, Minute-Maid, Inc., and Rex Jones, to recover damages for personal injuries sustained in a motor vehicle collision. Federal jurisdiction is based upon diversity of citizenship. After the plaintiff rested his case, which was being tried to a jury, the defendants moved for a directed verdict. The defendants' motion was granted and judgment was entered dismissing the action. This appeal followed.

The principal contention made by the plaintiff is that the district judge erred in not submitting the issue of defendants' negligence to the jury. In considering this question, we must bear in mind that cases should be submitted to the jury, the recognized trier of fact, unless the evidence is of such a character that reasonable men in impartial exercise of judgment might not reach different conclusions. On a motion for a directed verdict we must accept as true all the facts favorable to the plaintiff which the evidence tends to prove and draw all reasonable inferences against the defendants. Bowling v. Lewis, 4 Cir., 1958, 261 F.2d 311. The evidence, and all reasonable inferences arising therefrom, must be considered as a whole and in the light most favorable to the plaintiff. If more than one reasonable inference can be drawn from the evidence, the case should be submitted to the jury. See Scott v. Meek, 1956, 230 S.C. 310, 95 S.E.2d 619, and the cases therein cited.

"It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. * * * That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored." Tennant v. Peoria & P. U. Ry. Co., 1944, 321 U.S. 29, 64 S.Ct. 409, 412, 88 L.Ed. 520. Also see Pierce v. Ford Motor Co., 4 Cir., 1951, 190 F.2d 910, and Doggett v. Atlantic Holding Corp., 4 Cir., 1956, 239 F.2d 156.

Considering the evidence in light of the foregoing legal principles, it appears that about 1:15 o'clock on the afternoon of May 25, 1957, the defendant, Rex Jones, was operating a tractor-trailer type truck for the defendant, Minute-Maid, Inc., of Orlando, Florida, in a southerly direction on U. S. Highway 301 approximately three miles south of Orangeburg, South Carolina. The highway is a much traveled route with one lane of traffic for each direction of travel.

As the Minute-Maid truck came over the crest of a hill, there came into the view of its driver, approaching from the opposite direction, a Ford automobile, in which the plaintiff was a passenger, and a tractor-trailer type truck owned by L. G. DeWitt Company and being operated by one James C. Henry. Just prior to the time the Minute-Maid truck came into view, the driver of the DeWitt truck, then approximately 1,700 feet south of the crest of the hill, had pulled to his left for the purpose of passing the Ford automobile, which was traveling in the same direction and ahead of his truck. When the Minute-Maid truck came over the crest of the hill, the driver of the DeWitt truck, then in his left lane of travel and with the front of his cab about midway past the Ford automobile, observed that the Minute-Maid truck was being driven "terrifically fast." He saw that it was traveling too fast for him to safely get his truck around the Ford automobile, thus making it necessary for him to slacken his speed and get back behind the Ford. In undertaking to get back onto his right side of the highway, the DeWitt truck struck the Ford at about the right rear fender and tail light, causing it to go out of control and move into the south-bound lane of the highway. The Ford automobile, then out of control, continued to move north in the south-bound lane of the highway while the Minute-Maid truck continued to travel south toward the Ford automobile. The Minute-Maid truck and the Ford automobile collided with such force as to practically demolish the Ford. The point of impact between the two vehicles was in the defendants' right lane of travel and approximately 1,100 feet south of the crest of the hill and 600 feet north of the place where the driver of the DeWitt truck had started to pass the Ford automobile.

The Ford automobile, after being knocked out of control by the DeWitt truck, traveled up the highway a distance of 200 or more feet before coming into contact with the Minute-Maid truck. The Minute-Maid truck left 75 feet of light abrasion marks and an additional 100 feet of heavy skid marks prior to the point of impact. The driver of the Minute-Maid truck saw the Ford automobile coming across the road toward him immediately after the DeWitt truck had struck the Ford. In traveling the distance between the two vehicles, the driver of the Minute-Maid truck kept same "right in the path of travel where it normally would be," and made no attempt to drive onto the shoulder of the highway.

The collision occurred on a "sunshiny" day. Visibility was good and the driver of the Minute-Maid truck had a clear, unobstructed view of the highway from the crest of the hill south for a distance of approximately 1,800 feet to where the DeWitt truck was in the process of passing the Ford automobile.

The maximum speed limit on U. S. Highway 301 in this area, if no special hazard existed, was 55 miles per hour. There was evidence from which the jury could reasonably find that the Minute-Maid truck was traveling at least 70 miles per hour as it came over the crest of the hill and traveled down the slight decline to the point of the collision. The Minute-Maid truck was equipped with a Tachograph which was designed to record the speed of a vehicle up to 70 miles per hour. There was evidence that this device showed the Minute-Maid truck was traveling at the full recordable speed of 70 miles per hour before the collision. There was other evidence indicating that the Ford automobile was traveling between 40 and 45 miles per hour and that the Minute-Maid truck was traveling about twice that speed. Further, a reasonable inference could be drawn from the physical evidence that the Minute-Maid truck was traveling at an excessive rate of speed. From the time the Minute-Maid truck came into view until the time of impact, the Ford automobile traveled only about 600 feet at a speed of from 40 to 45 miles per hour, while the Minute-Maid truck traveled a distance of about 1,100 feet. At the time of the collision, the Minute-

Maid truck, after having laid down 75 feet of abrasion marks extending into an additional 100 feet of heavy skid marks, was still traveling at a speed of between 45 and 47 miles per hour.

The District Judge advised the jury that he was granting the defendants' motion for a directed verdict because the Supreme Court of South Carolina had recently held, in Green v. Boney, 1958, 233 S.C. 49, 103 S.E.2d 732, 739, " * * * that excessive speed of a driver who is traveling on his proper side of the road cannot be the proximate cause of or contributing factor to a collision with another automobile coming from the opposite direction on the wrong side of the road or which abruptly and wrongfully without warning turns across the center line of the road into the path of the driver who is proceeding on his proper side of the road in plain view provided the driver who is on his proper side of the road does all that is reasonably possible to avoid the collision after he discovers the peril."

Explaining further, the Court stated that " * * * the proximate cause of the injuries to this man in this case was caused by the sole negligence of the driver of the DeWitt truck. There is nothing the Minute-Maid truck could have done to have avoided this accident, and even if the Minute-Maid truck, under this decision, was violating the speed law, the plaintiff in this case cannot recover according to the decision of the Supreme Court of South Carolina by which I am bound. For that reason, I am directing a verdict for the defendant."

We are of the opinion that Green v. Boney, supra, the case relied upon by the District Judge, is not authority for the granting of the defendants' motion for a directed verdict in the case under consideration. In that case, there was evidence that the defendant was operating his automobile between 70 and 95 miles an hour immediately before the collision. There was conflicting evidence as to the distance between the automobiles of the plaintiff and the defendant at the time the plaintiff made a left turn in front of the defendant's automobile. The Supreme Court of South Carolina held that the case was properly submitted to the jury, and that the trial court did not commit error in refusing a motion for a directed verdict made by the defendant. The Court did approve a jury instruction to the effect that excessive speed of a traveler on his proper side of the road cannot be one of the proximate causes of a collision with another automobile coming from an opposite direction on the wrong side of the road, or which abruptly and wrongfully, and without warning, turns across the center line of the road into the path of a driver who is proceeding on his proper side of the road in plain view, "provided the driver who is on his proper side of the road does all that is reasonably possible to avoid the collision after he discovers the peril."

We cannot say that it is impossible for reasonable men to conclude that the driver of the Minute-Maid truck failed to do all that he reasonably could to avoid the collision after discovering the peril. The jury could reasonably conclude that the driver of the Minute-Maid truck discovered the peril when he was 1,100 feet from the point of impact, and that he did nothing to diminish his speed until a moment before the impact. Further, it is possible to conclude that if the operator of the Minute-Maid truck had brought his vehicle under control and reduced his speed commensurate with the hazard known to exist, or reasonably should have been apprehended, he could have either stopped or pulled onto the shoulder of the highway after the Ford automobile was struck and knocked out of control.

In Padgett v. Colonial Wholesale Distributing Co., 1958, 232 S.C. 593, 103 S. E.2d 265, the Supreme Court of South Carolina was confronted with a situation similar to the one here involved. There, the evidence disclosed that the defendant was traveling 55 miles an hour in a 45 mile zone and that immediately before reaching another vehicle approaching from the opposite direction, the other vehicle suddenly commenced

a left turn and stopped in the path of the defendant's truck, blocking the right lane in which the defendant was traveling. It was held that the trial court properly submitted to the jury the question of whether the defendant was guilty of negligence which proximately caused the injury to the plaintiff.

■ We think it clear that the plaintiff's evidence discloses substantial issues of fact in regard to negligence which should be passed upon by a jury. There is substantial evidence from which the jury might find that the Minute-Maid truck was being operated at an excessive and unlawful rate of speed. As stated above, this fact is supported by both the testimony of witnesses and the physical evidence. Further, there is evidence from which the jury could infer that the operator of the Minute-Maid truck did not have same under proper control and did not materially reduce his speed until a moment before the collision, even though he saw, or in the exercise of reasonable care should have seen, that the Ford automobile and the DeWitt truck were in a perilous situation. It has been firmly established by the Supreme Court of South Carolina that the violation of applicable statutes governing the operation of motor vehicles upon the highway, including the prima facie speed limit fixed by Section 46–362 of the 1952 Code of Laws of South Carolina, is negligence per se, and whether such breach constitutes a proximate cause of the injury complained of is ordinarily a question for the jury. Padgett v. Colonial Wholesale Distributing Co., supra and Chapman v. Associated Transport, Inc., 1951, 218 S.C. 554, 63 S.E.2d 465.

■ We think it equally clear that there was substantial evidence, when viewed in the light most favorable to the plaintiff, from which a jury could conclude that the negligence of the defendants was a proximate cause of the collision. In addition to what has already been noted, the jury might conclude, on the question of proximate cause, that the operator of the DeWitt truck could have passed the Ford automobile in safety and returned to his right side of the highway, or could have gotten behind the Ford automobile and returned to his right lane of travel without striking the Ford automobile, had it not been for the excessive speed of the Minute-Maid truck.

■ Proximate cause, like negligence, is ordinarily a question for the jury, and becomes a question of law only where the facts are agreed upon and not in dispute. Padgett v. Colonial Wholesale Distributing Co., supra; Chapman v. Associated Transport, Inc., supra, and Tennant v. Peoria & P. U. Ry. Co., supra. Proximate cause must not be confused with sole cause, and it should be borne in mind that the plaintiff, in order to establish actionable negligence, is only required to prove that the negligence on the part of the defendants was at least one of the proximate, concurring causes of his injury. The fact that the operator of the DeWitt truck was guilty of negligence which constituted one of the proximate causes of the collision does not help the defendants in the situation here presented, and it is for the jury to determine whether the negligence of the defendants was a concurring, proximate cause of the plaintiff's injury. Benton v. Pellum, 1957, 232 S.C. 26, 100 S.E.2d 534.

It should further be borne in mind that there is a clear difference in the function of a judge when he is ruling on a motion for a directed verdict and when he passes on a motion for a new trial or to set the verdict aside. This difference is clearly set out by Chief Judge Sobeloff in McCracken v. Richmond, Fredericksburg & Potomac R. Co., 4 Cir., 1957, 240 F.2d 484.

The plaintiff also takes exception to the action of the District Judge in excluding certain proffered testimony concerning the record of convictions of violations of the speed laws by the defendant, Rex Jones. We refrain from passing upon this contention in view of the

fact that this problem might not again arise at the trial.

For the reasons stated, the directed verdict will be set aside and the case remanded for trial.

Reversed and remanded.