Roy Charles **RUNDLE** and Mrs. Evelyn Rundle, Appellees,

v.

**GRUBB MOTOR LINES, INC.,** and Dwaine Murel Moser, Appellants.

No. 8440.

United States Court of Appeals Fourth Circuit.

Argued Nov. 16, 1961.

Decided March 15, 1962.

---

Armistead W. Sapp, Greensboro, N. C. (Adam Younce, and Sapp & Sapp, Greensboro, N. C., on brief), for appellants.

Bynum M. Hunter, Greensboro, N. C. (Smith, Moore, Smith, Schell & Hunter, Greensboro, N. C., on brief), for appellee, Roy Charles Rundle.

Richard L. Wharton, Greensboro, N. C. (Wharton, Ivey & Wharton, Greensboro, N. C., on brief), for appellee, Mrs. Evelyn Rundle.

Before BRYAN and BELL, Circuit Judges, and NORTHROP, District Judge.

NORTHROP, District Judge.

The issues before us arose out of a multiple automobile, tractor-trailer collision occurring on U. S. Route 29 a short distance north of Greensboro, North Carolina. The court below consolidated the trial of three cases growing out of this collision and submitted to a jury the issues of the negligence of each defendant, contributory negligence of the plaintiffs, the Rundles, herein appellees, and the counterclaims filed herein by the appellants, the defendants below, Grubb Motor Lines, Inc. and Dwaine Murel Moser, and by the plaintiff Roy Charles Rundle against Rose M. Brewer, owner of one of the automobiles. The jury in all instances returned a verdict favorable to the Rundles. Judgment against the defendants in all instances, in accordance with the verdict, was entered in the amount of $40,000 for personal injuries to Roy Charles Rundle, $1,750 for his automobile, and $7,000 for personal injuries of the plaintiff, Mrs. Evelyn Rundle.

We are here concerned with the appeal of the defendants, Grubb Motor Lines, Inc., and Dwaine Murel Moser, its driver. The other two defendants did not appeal.

Ten questions are raised on this appeal. The first eight challenge the sufficiency of the evidence to go to the jury and whether the evidence was sufficient to sustain the verdict. The ninth relates to the admissibility or the exclusion of certain evidence; and the tenth challenges the refusal of the court to give charges relating principally to emergency, insulation of negligence, and foreseeability. Two other issues were raised regarding the charges: the court's instructing the jury that it ignore a finding of negligence in the Grubb and Moser counterclaims as to Roy Charles Rundle if it found him not guilty of negligence on his principal claim; and directing the jury that Mrs. Rundle was not guilty of contributory negligence as a matter of law.

The evidence may be summarized as follows:

The collision occurred shortly after eight o'clock p. m., July 1, 1959. All of the vehicles had on their headlights. The paved highway, U. S. Route 29, was twenty-four feet wide, with the broken white line in the center to separate traffic, and a twelve-foot shoulder on each side, sodded and adequate to support vehicular traffic. The accident occurred about six-tenths of a mile north of Greensboro and south of Cobb's filling station, located on the west side of the highway, and having a frontage of 150 feet. The road at this point is both straight and level, and there was no vehicle or obstruction on the west shoulder or on the filling station premises. The collision took place in the center of the southbound lane to the south of the southernmost entrance to Cobb's service station. The tractor-trailer owned by the defendant Grubb and driven by the other defendant Moser was traveling in a southerly direction, while the Rundles were traveling north.

Travel in the northbound lane was blocked by an automobile which was stopped approximately five feet south of the southernmost entrance to Cobb's filling station, blinking his left-turn lights, and presumably waiting to cross the southbound lane to Cobb's filling station. There was one other automobile stopped immediately behind that car. The truck driver, Moser, observed these two stopped cars when about 900 feet away from them.

The Rundle car pulled up in back of the second car and, as some of the evidence tended to show, stopped. Very shortly thereafter, a fourth automobile driven by the defendant Wyrick rammed into the back of the Rundle car, forcing it into the southbound lane where the

impact between the Rundle car and the tractor-trailer occurred. This car was owned by Mrs. Brewer, who sought to recover from Roy Charles Rundle and against whom the jury returned verdicts for Roy Charles Rundle and his wife.

According to Moser, at the time of the occurrence of the events in the northbound lane, the front of his tractor-trailer was opposite the northernmost property line of Cobb's filling station. This placed him, by his own testimony, approximately 190 feet from the point of impact; for he stated that the Rundle automobile came out from behind the second automobile, which, according to other testimony, was some forty feet from the southernmost boundary of Cobb's filling station. Moser was proceeding at a speed of about fifty-five miles per hour, according to David I. Cobb. Moser himself testified that he was traveling between forty-five and fifty miles per hour and that he had not slowed down at all after seeing the cars backed up behind the turning first automobile from approximately 900 feet away; nor had he slowed down when, as he told the court and jury, he saw the headlights of two automobiles too rapidly approaching the rear of this stopped line of traffic when he was 300 feet from the point of impact.

The driver's seat of Moser's truck was about the height of the top of an automobile, enabling the driver to have a clear view of the road ahead. Having traveled this road on a number of occasions, Moser knew that he was approaching a congested area. The skidmarks left by the tractor-trailer and his own testimony indicated that his right wheel was approximately eighteen inches off the paved portion of the road and that the point of impact was six feet from the western edge of the paved portion of the highway. Thus, to the right of this point there was six feet of paving as well as twelve feet of shoulder. After the collision, the Rundle car was knocked fifty-four feet, spinning around with the trunk compartment sprung open and scattering luggage in the roadway and beneath the tractor-trailer.

■ When, as here, the evidence is conflicting and the inferences to be drawn therefrom are divergent, it is for the jury to make the determination, and not the trial judge. If more than one reasonable inference can be drawn from the evidence the case should be submitted to the jury. Grooms v. Minute-Maid, 267 F.2d 541 (4th Cir.1959). Atlantic & Pacific Stores, Inc. v. Pitts, 283 F.2d 756 (4th Cir.1960).

■ The trial judge carefully charged the jury here as to all the evidence. In addition, precise issues were given them embracing all possible findings. Certainly, in questioning the sufficiency of the evidence to support a verdict on the motions for a directed verdict and judgment n. o. v., the trial court, as it must, observed the evidence in the most favorable light to the appellees. National Alfalfa Dehydrating & Milling Co. v. Sorensen, 220 F.2d 858 (8th Cir.1955); Grooms v. Minute-Maid, supra; Taylor v. Rierson, 210 N.C. 185, 185 S.E. 627 (1936). See the lower court's opinion in this action: Rundle v. Wyrick et al., 194 F.Supp. 630 (M.D.N.C.1961).

There was sufficient evidence for the jury to find:

1. Moser was operating the tractor-trailer at approximately fifty-five miles per hour, in excess of the speed limit of fifty miles per hour for trucks and in violation of the General Statutes of North Carolina, G.S. § 20–141(b).[1]

---

1. General Statutes of North Carolina—Chapter 20, § 20–141. Speed Restrictions.

"(b) Except as otherwise provided in this chapter, it shall be unlawful to operate a vehicle in excess of the following speeds:

"(1) Twenty miles per hour in any business district;

"(2) Thirty-five miles per hour in any residential district;

"(3) Forty-five miles per hour in places other than those named in subdivisions (1) and (2) of this subsection for:

2. Moser operated the tractor-trailer at night without decreasing his speed, although he was approaching a congested area where obvious special traffic hazards existed; and he failed to decrease his speed, an act necessary to avoid colliding with the Rundle vehicle, breaching his legal duty to use due care. This was in violation of the General Statutes of North Carolina, G.S. § 20–141(a) and (c).[2]

3. Although Moser was sitting up high were he could see over the tops of cars, he failed to keep a proper lookout; he failed to see things which he obviously could have seen and he drove the tractor-trailer truck upon the highway without due caution and circumspection and at a speed and in a manner so as to endanger the person and property of others in violation of the General Statutes of North Carolina, G.S. § 20–140(b).[3]

4. Moser approached the congested area in the nighttime seeing that the northbound lane of traffic was blocked with a vehicle signaling a turn and that other vehicles were headed north at a rapid rate of speed approaching the rear of the vehicles blocking the northbound lane, and Moser did not slow down at all in the face of these obvious hazards until after the Rundle car was knocked into his line of traffic.

5. After the Rundle vehicle was knocked into his lane, Moser traveled approximately 250 feet or more down the highway before striking the Rundle vehicle without stopping and without turning into the wide open service station area in front of Cobb's store or onto the twelve-foot shoulder. Moser had ample opportunity to avoid the Rundle vehicle but he failed to act in time. See Taylor v. Rierson, supra.

"a. All vehicles other than passenger cars, regular passenger vehicles, pick-up trucks of less than one-ton capacity, and school buses loaded with children; and

"b. All vehicles, of whatever kind, which are engaged in towing, drawing, or pushing another vehicle: * * *

"(4) Fifty-five miles per hour in places other than those named in subdivisions (1) and (2) of this subsection for passenger cars, regular passenger carrying vehicles, and pick-up trucks of less than one ton capacity.

"(5) Whenever the State Highway Commission shall determine upon the basis of an engineering and traffic investigation that a higher maximum speed than those set forth in subdivisions (3) and (4) of this subsection is reasonable and safe under the conditions found to exist upon any part of a highway with respect to the vehicles described in said subdivisions (3) and (4), said Commission shall determine and declare a reasonable and safe speed limit, not to exceed a maximum of 60 miles per hour, with respect to said part of any such highway, which maximum speed limit with respect to subdivisions (3) and (4) of this subsection shall be effective when appropriate signs giving notice thereof are erected upon the parts of the highway affected."

2. General Statutes of North Carolina—Chapter 20, § 20–141. Speed Restrictions.
"(a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing. * * *
"(c) The fact that the speed of a vehicle is lower than the foregoing limits shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions, and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway, and to avoid causing injury to any person or property either on or off the highway, in compliance with legal requirements and the duty of all persons to use due care."

3. General Statutes of North Carolina—Chapter 20, § 20–140. Reckless Driving. * * *
"(b) Any person who drives any vehicle upon a highway without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property shall be guilty of reckless driving."

true

Cobb was offered in evidence. The ruling of the court was that the statement was at variance with Cobb's testimony as given on the witness stand and that it was in response to a leading question. To have allowed the statement would have been to allow the appellants to impeach their own witness, and it would hardly have clarified anything, as appellants contend. We find no error in the court's ruling, or, if it was in error to exclude it, the error is too inconsequential to merit a new trial.

The defendants-appellants objected, too, to the exclusion of the testimony of Wilson Daniel Miller concerning the alleged passing of candy to Mr. Rundle. This evidence, it is claimed, related to the contributory negligence plea of the appellants. There was testimony as to the passing of candy and it was not excluded. We do not need to pursue the point as to the possible finding of contributory negligence in this instance, because the question is moot. As the jury found Mr. Rundle free from negligence, the guest who passed the candy could not be guilty of contributory negligence, for there must be a causal connection.

A further objection was made to the exclusion of testimony in the depositions of William A. Mitchell and his wife The record clearly shows that only testimony which was pure speculation and guesswork was excluded and we do not find that the appellants could have been prejudiced as a result of the lower court's ruling in this instance.

We now come to the defendants' assignments as error the failure of the trial court to instruct the jury on the doctrines of emergency, insulated negligence and, as they call it, unforeseeability. They rely here upon Butner v. Spease, 217 N.C. 82, 6 S.E.2d 808 (1940), and Aldridge v. Hasty, 240 N.C. 353, 82 S.E.2d 331 (1954). Both cases involve vehicles turning without warning across the path of an oncoming speeding vehicle. In the Butner case the distance between the vehicles was forty feet; in the Aldridge case, twenty to twenty-five feet. These cases are readily distinguishable.

There is no basis here for applying the doctrine of the insulating negligence of a third party. The intervention of the negligence of such a third party must supersede entirely the negligence of the defendant and produce the injury without the negligence of the defendant. Atlantic Greyhound Corp. v. McDonald, 125 F.2d 849 (4th Cir.1942); Dickson v. Queen City Coach Co., 233 N.C. 167, 63 S.E.2d 297 (1951). The greater the distance between the two vehicles when the danger is or should be perceived, the less applicable are the two doctrines which the appellant seeks to call into play. Here the distance is too great; it is far greater than that where logic and experience indicate that it can be applied with justice. Even under Moser's own version of the facts, he had time in which to act.

The appellants were given only those charges to which the evidence entitled them. The judge did instruct the jury that if Rundle voluntarily drove his automobile in the opposite lane he would be guilty of negligence and not entitled to recover. Furthermore, he charged the jury as to the appellants' contention that, if Moser had no warning that the Rundle car was entering the south lane of traffic and if Moser had applied his brakes and stopped as soon as he could, there would be no liability on the part of the defendants, Grubb and Moser. He also gave the jury a detailed explanation of the meaning of proximate cause.

The trial judge thoroughly and more than adequately covered the law pertaining to all possible permutations of the facts that the jury reasonably could have found. As we have said, he discussed correctly and in great detail the doctrines of negligence, contributory negligence, foreseeability and proximate cause.

Therefore, for the foregoing reasons, the judgments of the lower court will be affirmed.

Affirmed.