**Dendy Robert SLIGH, Plaintiff,**

v.

**COLUMBIA, NEWBERRY AND LAURENS RAILROAD COMPANY,**
**Defendant.**

**No. AC/1561.**

United States District Court
D. South Carolina,
Columbia Division.

Feb. 14, 1966.

J. Wesley Drawdy, Columbia, S. C., for plaintiff.

W. C. Boyd, H. Simmons Tate, Jr., Boyd, Bruton, Knowlton & Tate, Columbia, S. C., for defendant.

WYCHE, District Judge.

This is an action brought under the Federal Employers' Liability Act, 45 U.S.C.A. 51 et seq., for injury alleged to have been sustained by the plaintiff as a result of the defendant's negligence. The complaint alleges that defendant is a common carrier by railroad engaged in interstate commerce; that plaintiff is an employee of defendant; that on February 7, 1964, plaintiff was injured when ordered to help move a motor car from defendant's tracks; that defendant's negligence consisted of not providing sufficient employees to move the motor car and of failing to maintain its roadbed so that plaintiff had a safe footing; and that plaintiff suffered a permanent injury to his back.

Defendant's answer admits that it is a common carrier by railroad engaged in interstate commerce; that plaintiff was one of its employees; and that the action is governed by the Federal Employers' Liability Act. The defendant further admits that plaintiff's supervisor instructed him and three other employees to move the motor car, but denies any negligence on its part and denies that plaintiff suffered a permanent injury to his back as alleged. By way of a second defense and in diminution of damages, defendant plead contributory negligence on the part of the plaintiff.

The case was tried before me without a jury. It is the function of the trial judge when a case is tried without a jury to weigh and appraise all of the conflicting testimony, accepting that which is believed and rejecting that which is not believed. Burgess v. Farrell Lines, Inc. (CA 4) 335 F.2d 885 (1964), cert. denied, 379 U.S. 1004, 85 S.Ct. 729, 13 L.Ed.2d 706.

In compliance with Rule 52(a), Federal Rules of Civil Procedure (28 U.S.C.A.),

I find the facts specially and state my conclusions of law thereon, in the above cause, as follows:

## FINDINGS OF FACT

Plaintiff was an extra gang laborer on the defendant railroad and had worked for it since 1934, with a brief interruption in his railroad service in 1944 or 1945. His immediate supervisor or gang foreman was J. E. Sligh.

On February 7, 1964, the defendant was completing the process of converting a spur track at Pinckney Street, Columbia, South Carolina, into a side track. Prior to the conversion, the railroad main line crossed Pinckney Street over a paved crossing. The spur track, coming off the main line at some distance away from Pinckney Street, did not cross or reach Pinckney Street. The railroad was extending the spur track across Pinckney Street and joining it to the main line on the other side of Pinckney Street, thus creating at Pinckney Street two parallel tracks, one being the main line and the other being the side track.

In extending the spur track across Pinckney Street, the railroad had to make a crossing of Pinckney Street, and incident thereto some dirt was graded and moved. In the grading operation, however, the dirt was moved and piled on the side of the spur track away from the main line, and no dirt got on the main line crossing.

Toward the end of the working day on February 7, 1964, the foreman gave an order to remove the motor car, which the men had been using, from the main line. The motor car was on the main line at about the center of the paved crossing over Pinckney Street. The width of the paved crossing was 37.5 feet.

The motor car was nine feet three inches long. The motor of the car is in the front end, and the rear end is the light end. Two parallel bars may be extended from each end of the car and these bars are three feet long when extended. The total weight of the car is 2,430 pounds.

When a motor car is moved, the two parallel bars on the rear (light) end are extended, and four men lift the rear end up (two men at each bar), "walk it around" so its rear wheels are off the tracks, then the motor is activated and the car is driven under its own power to the place where it is to be parked. The entire motor car is never completely lifted. Occasionally the front bars are extended and members of the crew bear down on these while the other members of the crew lift up on the rear.

A motor car is usually removed with four men as described, and this is a sufficient number. The motor car can be removed with only three men, and occasionally, in an emergency, two men can do the job. The plaintiff had removed this and similar motor cars on many previous occasions, averaging about two or three times a week since 1945.

When the order was given to move the car on February 7, 1964, the car was moved by the plaintiff, C. D. Bouknight, Jessie Lybrand and Sebie Letsy. All of these men had performed this duty many times before. The plaintiff's co-workers exerted their full strength in moving the car. The removal was done with the motor car resting at about the center of the crossing, where the paved surface was free of dirt and debris. The plaintiff had an opportunity to see and was aware of the condition of the track where the motor car was being removed. Plaintiff knew his own strength and capacity. He asked for no additional help. The other men present had other jobs to do, clearing up the site and putting tools away before leaving for the day. None of the men assisting in the lifting observed anything leading them to believe plaintiff suffered an injury when he lifted the motor car. No complaint was made at the time to the foreman, nor did he observe anything wrong with the plaintiff after the moving operation. Nevertheless, the plaintiff visited his personal physician Dr. Sidney E. Carter of Newberry, South Carolina, the next day and complained that he had hurt himself "while lifting rails". The doctor diagnosed his diffi-

culty as an acute back sprain. After conservative treatment plaintiff was permitted to return to work on February 17, 1964. Although he told his foreman he had had trouble with his back he did not request light duty, nor did he report any injury to his back on the job. On February 17, 1964, he was put on a gondola car unloading cross-ties with two other men and performed other duties. Three men are sufficient for unloading cross-ties. No complaint was made by him to the defendant that his work was too strenuous.

On February 20, 1964, plaintiff returned to Dr. Carter, who found about the same symptoms as before and again prescribed conservative treatment. On February 24, 1964, Dr. Carter finding nothing further wrong with the plaintiff sent him to Dr. E. M. Lunceford, an orthopedic surgeon of Columbia, South Carolina.

Dr. Lunceford saw the plaintiff on March 2, 1964, and took x-rays. The x-rays showed a congenital abnormality of the first sacral vertebra. He found that the first sacral vertebra, instead of being rigid and immobile as in a normal man, was movable and acting as a sixth lumbar vertebra. He also found certain roughness or arthritic changes in the articular surfaces. None of this, he said, was referable to any alleged accident of February 7, 1964. The lumbarization of the first sacral vertebra was congenital and the arthritic changes were the result of years of hard work, stress and strain and not the result of anything occurring at any one time.

Dr. Lunceford's diagnosis was essentially the same as that of Dr. Carter, a back sprain, for which he prescribed conservative treatment. The plaintiff responded well and after the third or fourth visit, the muscle spasm and neurological deficit observed earlier disappeared.

On July 28, 1965, almost a year and a half after the alleged injury, Dr. Lunceford performed an operation correcting the congenital defect and cleaned the arthritic accretions from the articular surfaces. Both of the conditions which the operation corrected pre-existed the alleged injury of February 7, 1964. Dr. Lunceford testified that there is every indication that plaintiff will have optimum recovery from the operation, but because of a back weakness disclosed by the congenital abnormality, plaintiff should not attempt to lift 150–300 pound objects but that he should be able to lift moderately heavy objects and perform remunerative work.

The defendant railroad was not guilty of negligence as alleged in the complaint or as sought to be shown upon the trial. Adequate, experienced and capable personnel were furnished plaintiff to assist in the removal of the motor car. The place from which the motor car was removed was adequately maintained and clean of dirt and debris. Defendant was not negligent in placing plaintiff on duty when he returned to work on February 17, 1964.

There was no injury to the plaintiff on February 7, 1964, as alleged in the complaint, or on February 17, 1964, as plaintiff sought to establish at the trial.

Even if there had been an injury to plaintiff, as alleged in the complaint or as he sought to prove, no negligence of the defendant played any part, even the slightest, in producing the injury.

The bodily complaints and the medical treatment thereof were not referable to any negligence on the part of the defendant.

## CONCLUSIONS OF LAW

Under the Federal Employers' Liability Act "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957). However, a railroad is not an insurer of the employee's safety, and the bare occurrence of an injury raises no presumption of negligence, without proof

of which there can be no recovery. McCracken v. Richmond, Fredericksburg & Potomac R. Co., (CA 4) 240 F.2d 484 (1957).

As said by the Fourth Circuit Court of Appeals in the recent case of Ambold v. Seaboard Air Line Railroad Company, (CA 4) 345 F.2d 30, 33 (1965): "While the Rogers case emphasizes the liberal interpretation that must be placed upon the statute, and defines the narrowly limited area in which the courts are permitted to disturb jury verdicts in cases of this type, we do not understand the decision to relieve the plaintiff from the burden of proving some act of negligence on the part of the railroad." (Cert. den. 382 U.S. 831, 86 S.Ct. 70, 15 L.Ed.2d 75).

The Third Circuit Court of Appeals refers to the repeated use of the phrase "with reason" in the *Rogers* case, and concludes that the Supreme Court indicated no departure from the normal requirement that the plaintiff, the party with the burden of proof, must " 'present probative facts from which the negligence and the causal relation could reasonably be inferred.' " Dessi v. Pennsylvania Railroad Company, (CA 3) 251 F. 2d 149, 151 (1958), cert. den. 356 U.S. 967, 78 S.Ct. 1006, 2 L.Ed.2d 1073.

Where there is a conflict between the plaintiff's testimony and the testimony of other witnesses called by the plaintiff, this is to be resolved by the trier of the facts. McCracken v. Richmond, Fredericksburg & Potomac R. Co., (CA 4) 240 F.2d 484 (1957). Where the case is tried before a judge without a jury, the trial judge is the trier of facts and has the function of weighing and appraising the conflicting testimony. Burgess v. Farrell Lines, Inc. (CA 4) 335 F.2d 885 (1964), cert. denied, 379 U.S. 1004, 85 S.Ct. 729, 13 L.Ed.2d 706.

Applying the foregoing principles of law, the plaintiff has the burden of proving that the defendant was negligent and that such negligence played some part in producing an injury to the plaintiff, and having weighed the testimony and evidence in this case, in my opinion the plaintiff has not sustained his burden of proof.

For the foregoing reasons,

It is ordered, that judgment be entered for the defendant.