ERNEST RAY PUNCH, BY AND THROUGH THURMAN R. PUNCH, NEXT FRIEND FOR ERNEST RAY PUNCH, INFANT v. T. E. LANDIS AND C. E. LANDIS, TRADING AS LANDIS MOTORS; HENRY CLICK TRUITT; P & G CHAIR COMPANY, INC.; GRADY CARROLL, JR.; EDNA WRENN SCARLETT; WILLIAM LAFAYETTE ABERNETHY; HOUSTON DONNELL HAVNAER; ABERNETHY'S, INC; AND EDNA WRENN SCARLETT, ADMINISTRATRIX OF THE ESTATE OF RUSSELL WAYNE SCARLETT, DECEASED.

(Filed 21 November 1962.)

**1. Automobiles § 11—**

The operator of a wrecker towing another vehicle at night is responsible for having the lights required by statute on the back of the towed vehicle.

**2. Same—**

By the terms of G.S. 20-129(g) the requirement of a stop lamp on the back of vehicles does not apply to vehicles manufactured prior to 31 December 1955.

**3. Automobiles § 9—**

The stopping of a vehicle on a highway after an accident is not negligence, since a motorist is required by statute to stop after an accident. G.S. 20-166(b).

**4. Automobiles § 41e—**

Evidence tending to show that the driver of a wrecker towing another vehicle had burning on the back of the towed vehicle lights sufficient to warn following motorists, that upon suddenly encountering fog, which covered the road for only a few hundred feet, he slowed to 10 or 15 miles per hour, that upon feeling a slight impact from a car hitting the rear of the towed vehicle, he came to a stop, and, that as he came to a

stop another car hit the rear of the first car with tremendous impact, the second impact occurring some 5 to 10 seconds after the first, *is held* insufficient to be submitted to the jury on the issue of negligence on the part of the driver of the wrecker.

**5. Automobiles § 41a—**

Negligence must be the proximate cause of damage or injury in order to be actionable.

**6. Same—**

Where the direct testimony and the physical facts at the scene disclose that plaintiff passenger received no injury when the car in which he was riding collided with the rear of another vehicle in a fog, and that within 10 seconds of this slight impact another car collided with the rear of the car in which plaintiff was riding with a tremendous impact which caused extensive damage to the vehicles and was the sole cause of plaintiff's injury, motion to nonsuit made by the administratrix of the driver of the car in which plaintiff was riding should be allowed.

**7. Automobiles § 39—**

The physical facts at the scene of the accident may be such as to indicate excessive speed unquestionably.

**8. Automobiles § 41f—**

Evidence tending to show that an automobile struck the rear of a van which was being towed by a wrecker, that the impact occurred shortly after the vehicles had entered a fog and were being driven at a very slow speed, the impact being very slight, and that within ten seconds after the impact the driver of another car hit the rear of the automobile, with such force as to drive it under the van, shearing off the top more than half way back, and driving the heavy van upon the rear of the wrecker, *is held* sufficient to be submitted to the jury on the issue of negligence of the driver of the second car, since the physical evidence discloses that the second car was being driven at excessive speed.

APPEAL by all defendants execpt P & G Chair Company and Grady Carroll, Jr., from *Froneberger, J.,* January, 1962 Regular Term, CATAWBA Superior Court.

This civil action was instituted on behalf of Elmer Ray Punch to recover damages for personal injuries sustained in a collision involving three motor vehicles. Judgment of nonsuit was entered as to P & G Chair Company and Grady Carroll, Jr. The circumstances under which the collisions occurred are stated by this Court in the cases of *Lawing v. Landis* and *Houser v. Landis, reported in* 256 N.C. 677, 124 S.E. 2d 877.

The parties stipulated the ownership of the vehicles involved and the agency of the drivers as disclosed in the former opinion of this Court. Additional evidence was offered by all parties except Edna Wrenn Scarlett, individually, and as administratrix of her son.

A summary of the additional evidence is here given: Highway 64-70 is a four-lane, hard surface road, 52 feet wide. The two north lanes are for west-bound traffic and the two south lanes are for east-bound traffic. The rear-end collisions occurred in the outside, or north, lane as the three vehicles were traveling west. The wrecker towing the chair company van was in front, followed by the Chevrolet in which the plaintiff was a guest passenger. The Ford station wagon followed the Chevrolet. The evidence indicated the collisions occurred about 100 to 160 yards after the vehicles entered the fog bank. The first impact occurred when the Chevrolet struck the rear of the van. The sequence of events is disclosed by the adverse examination of Henry Click Truitt:

"I was traveling at 10 to 15 miles per hour and felt this impact. . . . So far as I could tell, the first impact did not have any effect upon the operation of the truck. By this I mean it still rolled free. I stopped as quick as I could, but so far as I could tell, I couldn't tell any difference with the truck rolling. So far as I could tell, the first impact did not cause the furniture van to come up against the wrecker. It did not cause it to swing on my wrecker. . . . Thereafter, I had a second impact from the rear; it was five or ten seconds after the first impact that I felt or heard or experienced the second impact; I don't think it was over that. I was in the wrecker when I felt the second impact. I was in the seat under the wheel. The second impact seemed to be much more severe and a lot noisier than the first impact; it sounded real loud. . . . I examined my vehicle and the vehicle I was towing after I got traffic under control. I could not move it.

"I did not receive any injuries in the first impact. . . . After the first impact and before the second, I can testify positively whether or not the truck was on my wrecker. I am positive the truck was not on the wrecker after the first impact. I know this because it wasn't hit that hard. . . . Also, I had looked out the back glass. While I was looking out the back glass the second impact occurred so hard that it knocked my hat off. . . . I observed the position of the Chevrolet under the truck; the radiator of the Chevrolet was jammed up against the housing of the truck at the back axle. The center of the Chevrolet was approximately at the center of the axle."

After the first impact the driver of the wrecker began to slow down and stopped in five to ten seconds — just as the second impact occurred. Grady Carroll, Jr., who was riding with Truitt in the cab of the wrecker, testified: "After we got into the fog a little we had an impact at the rear of the P & G truck. . . . In my opinion Mr. Truitt was driving approximately 15 miles per hour. . . . After the first impact occurred I opened the wrecker door and jumped out. . . .

I don't know what made me realize there was going to be another impact . . . I turned to my left. . . . I was half way up the bank when the second impact occurred. A piece of flying metal or something struck me in the head. The second impact was loud like something had been torn up. . . . Over half of the Chevrolet automobile was under the truck after the second impact."

Henry Click Truitt testified to the following damage to the wrecker: "As a result of these collisions, the boom assembly on my wrecker was broken; this is the boom that elevates back and has cables on it that picks up vehicles. The right rear drum assembly was broke on the crane. The cable assemblies were broken. The boom drum that the cable wraps around was broken. The boom lock assembly, the propeller shaft, the gear, the drive sprocket, the cable guides, the boom cables, the universal joints, the jack shaft, the clutch comb and the shaft assembly were broken. The crane assembly was bent forward and broke from the truck frame. The frame assembly on the wrecker was bent. All the bolts in the rear housing, that holds the rear housing to the springs, were broken. Two 5-foot long log chains were broken. Four 7/16" cables and one 3½" tow bar were broken."

The evidence showed extensive damage to the Chair Company's van. "The complete undercarriage of the truck (van), that is, the dual wheels, axle, bell housing group, and other parts was knocked forward from the U-bolts. Most of the damage was on the left side."

The Chevrolet was extensively damaged front and rear. The most severe rear-end damage was on the left side. The wrecker, the van, and the Chevrolet were on the extreme right side of the north lane for west-bound traffic. The Ford station wagon was stopped a few feet to the rear of the Chevrolet and slightly left. The heaviest damage to the station wagon was to the right front. Before the accident the van was attached to the wrecker with the front elevated 15 to 18 inches above the road surface. After the vehicles came to rest, the front of the van had been driven upon the rear of the wrecker's towing assembly and was elevated 4½ to 5 feet above the road surface. The empty van weighed 22,000 pounds.

Photographs of the different vehicles were introduced in evidence for the purpose of enabling the witnesses to illustrate their testimony. They were not offered and not admitted as substantive evidence.

All defendants remaining in the case, except Edna Wrenn Scarlett, individually, and as administratrix, offered evidence, at the close of which all defendants made motions for judgment of nonsuit, and excepted to the court's refusal to allow them. The jury answered issues of negligence in favor of the plaintiff and against all defendants remaining in the case, and assessed plaintiff's damages at $10,000. From a judgment on the verdict, the defendants appealed.

*Sigmon & Sigmon, by Jesse Sigmon, Jr., for plaintiff, appellee.*

*Patrick, Harper & Dixon by Charles D. Dixon, Bailey Patrick, for T. E. Landis and C. E. Landis, Trading as Landis Motors, and Henry Click Truitt, defendants, appellants.*

*Patton & Ervin, by Frank C. Patton, for defendant Scarlett, appellant.*

*James C. Smathers, Emmett C. Willis, for defendants William Lafayette Abernethy, Houston Donnell Havnaer, and Abernethy's Inc., appellants.*

HIGGINS, J.   The evidence indicated that Thomas Wesley Weaver, Douglass E. Houser, Russell Wayne Scarlett, Larry Nelson Scarlett, and the plaintiff were riding in the Chevrolet at the time of the collisions. All were killed except the plaintiff. He was a guest passenger riding in the back seat.

The personal representatives of Weaver and Houser instituted separate civil actions against all the defendants for damages under the wrongful death statute. The cases were consolidated and tried together. The jury absolved all defendants from liability. On appeal, this Court held the record of the trial failed to disclose error. (256 N.C. 677) This plaintiff was not a party to the former actions and hence not bound by the jury's findings.

In this case the jury found the defendants were guilty of actionable negligence which caused the plaintiff's injury. From the judgment on the verdict, they appealed.

The defendants T. E. Landis and C. E. Landis, trading as Landis Motors, contended the evidence was insufficient to present a jury question as to their actionable negligence and that the court committed error in denying their motion to dismiss. In passing on their motion they must be charged with any negligent failure to have the rear of the Chair Company's van properly lighted. Their agent attached it to their wrecker and undertook the towing operation. In order to protect himself from the glare of the van's driving lights, he turned them off. This also cut off the tail lamp. However, the evidence disclosed that seven marginal lights in good working order — one at each of the four corners and three along the lower margin of the van — were burning on the van during the towing operation. In addition, three red reflector lights were installed on each mud guard over the rear wheels. The plaintiff alleged failure to have a stop lamp as required by G.S. 20-129(g). However, the plaintiff's complaint in Article 14, alleged the van was a 1952 model. Hence it was not affected by the stop lamp section which applied only to vehicles manufactured since December 31, 1955. The lights displayed on the

rear of the van would seem to be sufficient to warn following motorists. The ribbon of fog over the stream was extremely dense. But it was very narrow and covered the road for only a few hundred feet. Neither the speed — 10-15 miles per hour — nor the act of stopping after the first impact can be held as actionable negligence. The driver of a vehicle involved in an accident is required to stop. G.S. 20-166 (b). The evidence of negligence on the part of T. E. Landis and C. E. Landis, trading as Landis Motors, was insufficient to be submitted to the jury. The trial court committed error in overruling their motion for nonsuit.

The defendant Mrs. Scarlett, both individually and as administratrix, insists the court committed error in overruling her motion to nonsuit at the close of all the evidence. In following the wrecker and the towed vehicle, the driver of the Chevrolet at all times was in the proper lane. The speed in the dense fog could not have been great. The contact with the rear of the van was relatively light and not enough to interfere with Truitt's operation. The position of the towed vehicle was not changed. Truitt testified: "I was traveling 10-15 miles per hour when I felt the impact. I just knew the furniture van had been hit. So far as I could tell the first impact did not have any effect upon the operation of the truck. By this I mean it still rolled free. . . . After the second impact . . . I could not move it."

The evidence fails to show the plaintiff sustained any injury as a result of the first impact. We must conclude from the continued movement of the wrecker and the van the Chevrolet was not under the van while Truitt was slowing down.

All the evidence disclosed that the "dug out" place in the concrete was under the Chevrolet after the second impact. There was debris both in front of the Chevrolet, under it, and to the rear after the second impact. The evidence of Truitt was explicit that the damage to the wrecker was caused by the second impact which drove the front of the van into his wrecker with such terrific force that it caused the extensive damage which he describes.

The extensive damage to the undercarriage of the van was caused by the second impact. This second impact after the slowing down operation, consuming five to ten seconds, apparently drove the Chevrolet under the van with such force that the top was pushed back, the hood driven into the occupants, causing the death of the four and injury to the plaintiff. Evidence is lacking that any injury to the plaintiff resulted from the first impact.

To make out a case the evidence must show negligence and resulting damage or injury. *Benthall v. Hog Market*, 257 N.C. 748; *Wilson v. Geigy*, 236 N.C. 566, 73 S.E. 2d 487. The motion for nonsuit

by Mrs. Scarlett, individually, and as administratrix, should have been allowed. *Gatlin v. Parsons*, 257 N.C. 469, 126 S.E. 2d 51; *Riddle v. Artis*, 246 N.C. 629, 99 S.E. 2d 857.

The evidence permits the inference that Abernethy's Ford station wagon crashed into the rear of the Chevrolet, drove it under the van, shearing off the top more than half way back, injuring the plaintiff who was a guest passenger in the back seat, and killing the four other occupants. The impact of the Chevrolet upon the rear of the van was relatively light. The front of the van was not raised on the wrecker. The movement of the wrecker was free and easy and continued for five to ten seconds during which Truitt brought it to a stop. At that instant the Ford station wagon crashed into the rear. The van, weighing 22,000 pounds, was driven upon the bed of the wrecker, making a shambles of the heavy towing equipment and lifting the front of the van from its former position — 15-18 inches in the towing position — to an elevation of 4½ to 5 feet above the road surface. This impact caused a piece of steel from the wreckage to strike Carroll who was climbing the bank several feet from the road. The Chevrolet was driven under the van so that the wrecker and the attached van could not be moved. The extent of this wreckage unquestionably indicates excessive speed. Increase in speed multiplies the destructive force generated by a moving automobile. Such is nothing more than the application of the law of physics.

The evidence of actionable negligence on the part of William Lafayette Abernethy, Houston Donnell Havnaer, and Abernethy's, Inc., was sufficient to go to the jury and to sustain the finding of negligence as to them. Their objections to the court's charge are not sustained by the record. Error insofar as these defendants are concerned is not disclosed.

On the appeal of T. E. Landis and C. E. Landis, trading as Landis Motors, and Henry Click Truitt, the judgment is

Reversed.

On the appeal of Edna Wrenn Scarlett, individually and as administratrix of Russell Wayne Scarlett, the judgment is

Reversed.

On the appeal of William Lafayette Abernethy, Houston Donnell Havnaer, and Abernethy's, Inc., we find

No error.