William L. **ABERNETHY**, Houston D.
Havnaer, Sr., and Abernathy's,
Inc., Appellants,

v.

**UTICA MUTUAL INSURANCE COM-
PANY**, Appellee.

**No. 10777.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 11, 1967.

Decided Feb. 6, 1967.

Eddy S. Merritt and Marshall V. Yount, Hickory, N. C., for appellants.

William B. Webb, Charlotte, N. C., (Carpenter, Webb & Golding, Charlotte, N. C., on brief), for appellee.

Before BOREMAN and WINTER, Circuit Judges, and KAUFMAN, District Judge.

WINTER, Circuit Judge:

In this suit, brought by appellants (the "insureds") against their insurer ("Utica") for negligence and bad faith in its failure and refusal to enter into negotiations for a settlement of two death cases against them, to make any offer of settlement therefor, and to accept the offer to settle both cases for $12,500.00, the district judge granted Utica's motion for judgment at the close of the insureds' case. Because we think there was sufficient evidence from which the jury, under applicable North Carolina law, might have concluded that Utica was proved guilty of bad faith, we reverse the judgment and remand the case for a new trial.

Under two policies, Utica insured the insureds for a maximum limit of $30,000.00 against liability for injuries and damages, including death, that might arise through operation of a Ford station wagon. The policies contained customary language requiring Utica to defend the insureds and empowering Utica exclusively to settle litigation filed against the insureds. On the night of February 23, 1961, the station wagon collided with the rear of a Chevrolet automobile which a short time previously had collided with the rear of a furniture van at a time when the van was being towed by a wrecker. There was evidence that both collisions occurred in a patch of heavy fog. As a result of either or both impacts, the front of the truck was driven from an elevation of 15–18 inches above the road to the back of the wrecker— $4\frac{1}{2}$ to 5 feet above the road surface— doing considerable damage to the heavy towing equipment. Extensive damage was also done to the rear of the van.

The Chevrolet, after the second collision, was found under the truck, badly damaged, with its top partially sheared off. Of five passengers in the Chevrolet, four were killed and the fifth seriously injured. The Ford station wagon was damaged in the front. Four passengers in the station wagon were injured, but not severely.

Suits, based upon alleged wrongful death, were filed for each of the deceased passengers in the Chevrolet. Recovery of $100,000.00 in each case was sought. A fifth suit for personal injuries by the surviving passenger of the Chevrolet was also instituted and in it, too, the *ad damnum* was $100,000.00.

In a consolidated trial, two of the death cases were tried first. Negligence on the part of the insureds was disputed, it being asserted that the deaths were caused solely by the excessive speed of the Chevrolet in a patch of fog, which caused it to collide with great force into the towed van, that the subsequent impact of the station wagon into the Chevrolet was slight, and not the proximate cause of the deaths, and that, in any event, the collision of the station wagon with the Chevrolet was the result of an unavoidable accident. The owners of the furniture van were dismissed by the trial court and the case submitted to the jury solely against the insureds and the owner and operator of the wrecker. The jury returned a verdict for them, which was affirmed on appeal. Lawing, Admr., v. Landis, 256 N.C. 677, 124 S.E.2d 877 (1962).

Next to be tried was the suit by the sole surviving passenger in the Chevrolet. It resulted in a jury verdict of $10,000.00 against all defendants, including, in addition to the insureds, the owner and operator of the furniture van, the owner and operator of the wrecker and the estate of the deceased operator of the Chevrolet. On appeal, the judgment entered was affirmed as to the insureds, but reversed as to all other defendants. Punch v. Landis, 258 N.C. 114, 128 S.E.2d 224 (1962). It is significant that the judgment against the administratrix of the deceased driver was reversed because "[E]vidence is lacking that any injury to the plaintiff resulted from the first impact." 128 S.E.2d, at 228.

■■ Prior to the trial of any case, Utica promptly engaged counsel to defend the insureds. Being apprehensive of their potential exposure to liability and their limited insurance coverage, however, the insureds also employed counsel to represent their personal interests in the cases. Their counsel participated in both the first consolidated trial of the death cases and in the personal injury trial, which resulted in a verdict against them. Utica, directly or through its counsel, had made no effort to settle any case. After the verdict in the personal injury case, which had the effect of reducing the insureds' coverage to $20,000.00, was affirmed on appeal, their counsel undertook to bring about a settlement of the two remaining death cases. The decedents in these cases were 21-year-old and 19-year-old healthy, high school graduates, who were steadily employed and earning $100.00 and $55.00 per week, respectively, one of whom was the driver of the Chevrolet. In such cases, under North Carolina law, recovery, if negligence is proved, is by the decedent's personal representative and is not conditioned upon the decedent's leaving dependents or beneficiaries of his estate. N.C.G.S. § 28–173; Warner v. Western N.C.R.R., 94 N.C. 250 (1886). Indeed, under North Carolina law, evidence of the decedent's dependents or beneficiaries is irrelevant and inadmissible. McCoy v. Atlantic Coast Line R.R., 229 N.C. 57, 47 S.E.2d 532 (1949).

By communication with counsel representing the estates of the decedents, personal counsel for the insured ascertained that both of the remaining death cases could be settled for the aggregate sum of $15,000.00, and probably could be settled for the aggregate sum of $12,500.00. This offer of settlement was reduced to writing and the information communicated to Utica and its counsel. Notwith-

standing the insureds' demand that Utica settle the cases, and the further statement that, if Utica did not settle and judgments in excess of $20,000.00 were rendered, the insureds would assert Utica's liability for any excess, Utica replied that it did not deem the insureds liable and it would offer or pay nothing in settlement. Utica further advised the insureds that they might seek and pay for a settlement of any excess that they feared the plaintiff-estates might recover.

When the trial of the two remaining death cases began, the trial judge conducted a conference in chambers after the jury had been selected but before testimony was presented. The matter of settlement was broached and counsel for Utica stated that he did not have authority to pay $50.00 to settle both cases. At that point counsel for the plaintiff-estates withdrew his offer of settlement for $15,000.00 and said, because he was prepared to proceed with the trial, he would not settle for less than the policy limits, i. e., $20,000.00. During the course of the trial the injured passenger in the Chevrolet testified that his then deceased fellow-passengers conversed and looked at one another after the Chevrolet hit the furniture van but before the Chevrolet was hit by the station wagon, thus negating the inference that the initial impact was the cause of the deaths. This was the first time that this testimony was presented and, upon its presentation, the trial judge suggested to counsel for Utica that he communicate with his client about settlement. Counsel for Utica refused to accede to the request.

■ The trial proceeded and resulted in a verdict against the insureds of $25,000.00 for the death of the 21-year-old decedent and $22,500.00 for the 19-year-old decedent. On appeal, both judgments were affirmed. Scarlett, Administrator v. Abernethy, 261 N.C. 514, 135 S.E.2d 212 (1964). The insureds' suit against Utica ensued, and the motion granted at the close of the insured's evidence. Because of the manner in which the appeal reaches us, we take the facts, and the inferences to be drawn therefrom, in the light most favorable to the insureds. If explanation there is for the omissions and commissions of Utica relied on by the insureds for reversal, we know them not. Their nature and sufficiency must await the presentation of Utica's defense on retrial.

■ All parties agree, as do we, that North Carolina, the law of which we must apply, follows the rule that an insurer, in the exercise of its contract right to effect settlement, such as Utica had under both policies in this case, is required "to act diligently *and in good faith* in effecting settlements within policy limits, and if necessary to accomplish that purpose, to pay the full amount of the policy." (emphasis supplied) Alford v. Textile Insurance Company, 248 N.C. 224, 103 S.E.2d 8, 12, 70 A.L.R.2d 408 (1958). See also, Wynnewood Lumber Company v. Travelers Insurance Company, 173 N.C. 269, 91 S.E. 946 (1917); Bradford v. Kelley, 260 N.C. 382, 132 S.E.2d 886 (1963); Henry v. Nationwide Insurance Company, 139 F. Supp. 806 (E.D.N.C.1956); N.C.G.S. § 20–279.21(b) (3). Under this rule, an insurer may not be held liable for an honest mistake in judgment, even if unreasonable; it may be held liable only if it acts with wrongful or fraudulent purpose or with lack of good faith. Wynnewood Lumber Company v. Travelers Insurance Company, supra. In a minority of other jurisdictions, an insurer, in the exercise of its contract right to settle litigation against its insured, is held to a more stringent standard of conduct. There, an insurer is bound to do what an ordinary prudent insurer with experience in such matter would do under like circumstances. A thorough and illuminating analysis of these opposing views, and the authorities in which they have been developed, is contained in Brown v. United States Fidelity and Guaranty Company, 314 F.2d 675 (2 Cir. 1963). See also, Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv.L.Rev. 1136 (1954).

This is not a case like Gaskill v. Preferred Risk Mutual Insurance Company, 371 F.2d 792 (4 Cir., Decided January 10, 1967), where we affirmed a judgment against an insurer *per curiam* on the opinion of the district judge (251 F. Supp. 66 (D.Md.1966)), in which settlement did not occur because the insurer placed too low a value on a case and when it raised its sights its counsel lacked diligence in accepting an offer of settlement before the offer was withdrawn. This is a case of a flat refusal to negotiate under circumstances that we think gave rise to an obligation to engage with *bona fides* in settlement negotiations. We have no occasion here to consider the *bona fides* of any offer made, or what offer should have been made by Utica, because the record is clear that there was none. Nor do we need to make nice appraisals of the value of the cases to create circumstantial evidence to determine whether *bona fides*, or the lack thereof, may be inferred.

■■ Absent reasonable grounds on which to conclude that a party, or his counsel, or both, is asserting a fraudulent claim, every law suit has some worth, albeit only a "nuisance" value where a full investigation and preparation of the case provide the basis for concluding that the insured's potential liability is remote. At the time of Utica's specific refusal to negotiate, there was a jury determination of non-liability on the part of the insureds; but there was also a jury determination of liability on the part of the insureds and a ruling that there was insufficient evidence, as a matter of law, that the deceased driver was guilty of contributory negligence to warrant the submission of that issue to a jury. While these conflicting jury determinations had their effect on the worth of the cases, Utica knew that in any event the question of negligence of its insureds was a jury question, and it would be unreasonable to conclude that the cases were valueless. This case is thus different from the closest one on its facts, Olson v. Union Fire Insurance Company, 174 Neb. 374, 118 N.W.2d 318 (1962), relied on by Utica, because in *Olson* there was no prior jury determination of liability under the applicable standard.

■ Counsel for the insureds, by his negotiations with counsel for the plaintiff-estates, demonstrated that the latter's demand was not clearly outrageous and, moreover, that $15,000.00 was probably not an absolute demand but an amount for negotiation. We do not determine that Utica should have paid $12,500.00 or $15,000.00; but Utica may not be heard, under the circumstances here, to claim that it had a right to do nothing and to take no part in settlement discussions until such time as counsel for the plaintiff-estates, by himself or at the urging of insureds' counsel, successively bid against himself until his demand was lowered to the point that it was attractive to Utica, if ever.

In American Casualty Co. of Reading, Pa. v. Howard, 187 F.2d 322 (4 Cir. 1951), we held, applying South Carolina law, that an insurer had not lacked good faith when it refused to settle a case for $5,000.00, after it made four offers to pay lesser sums, and there was a resultant verdict of $7,000.00. We remarked the lawyers who represent insurers are not required to be prophets who can accurately foretell the results of litigation and that mere mistakes of judgment do not, of themselves, impose liability beyond policy limits on their insurer clients, if the lawyers act reasonably, in good faith, and without negligence. We added:

"We have adverted at some length to the duty of the insurer under the policy here to safeguard the interests of the insured. It should be remembered, though, that the premium on such policies varies with the insurer's maximum limit of liability under the policy. Accordingly, when the insurer fully lives up to its duty, there is no right in the insured to compel the insurer to offer the amount of its maximum limit in order to effect the amicable settlement of a claim against the insured and to protect the insured

against a possible judgment in excess of the policy limit. Insured can readily secure all needed protection by purchasing, and paying for, a policy with a high limit of liability on the insurer." Id., p. 329.

■ That the insureds' insurance coverage of $20,000.00 would seem to be inadequate, if liability be established, in a suit for the death of two young, healthy males with demonstrated earning power, is a factor to be considered along with the previous jury determination of liability and the receptiveness of counsel for the plaintiff-estates to settlement. As Utica, in its brief, concedes, good faith requires that the insurer take into consideration the insured's interest as well as its own when making decisions as to settlement and that the cases require that the insurer give fair consideration to the exposure of the insured as well as to its own financial interests. This *concessum* represents the prevailing modern view. Brown v. United States Fidelity and Guaranty Company, supra, 314 F.2d at pp. 678–679; Keeton, Liability Insurance and Responsibility for Settlement, supra, at pp. 1143–1148. Professor Keeton treats our opinion in the *American Casualty* case as in accord with that view. 67 Harv.L.Rev., p. 1144, fn. 20.

■ Viewed from either the standpoint of the insureds' interests, or that of Utica, the flat refusal to negotiate, under the circumstances of substantial exposure to liability, a demonstrated receptive climate for settlement and limited insurance coverage, could have been found to show lack of good faith in Utica's exercise of its exclusive power to settle. Utica's initial lack of good faith in the exercise of its exclusive power to settle up to the time that the third trial began could have been found to be magnified and confirmed by the statement of its counsel in chambers that he had no authority to pay even $50.00.

The refusal of Utica's counsel to communicate with his client, after the very damaging testimony of the surviving passenger in the Chevrolet had not broken down on cross-examination, to determine if he would be given any authority to negotiate a settlement, should also have been submitted to the jury on the issue of Utica's good faith. True, at this point any outstanding demand on the part of counsel for the plaintiff-estates had been raised to $20,000.00, but the effect of the testimony was further to diminish the hope of successful defense below what hope remained after affirmance of the judgment entered on the jury verdict in the surviving passenger's case.

The continuation of refusals, unexplained as they are in this record, might, singly or in combination, be determined to be a blind disregard of the interests of all parties and to constitute a lack of good faith supporting recovery. We say this, of course, on a record terminated before any defense was interposed. We do not adjudicate Utica to be liable to the insureds. We decide only that that is a question for the jury.

Reversed and remanded.